# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**BOBBY TERRICK**                                                    **CIVIL ACTION**

**VERSUS**                                                                   **NO. 06-0541**

**N. BURL CAIN, WARDEN**                                    **SECTION "D" (6)**

## REPORT AND RECOMMENDATION

The matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8 (b) of the Rules Governing Section 2254 Cases.

Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. For the reasons which follow, **IT IS HEREBY RECOMMENDED** that the instant petition be **DENIED**.

## Procedural History

Petitioner Bobby Terrick, a Louisiana state prisoner, was arrested on a charge of manslaughter on July 31, 2001 and subsequently indicted on the count of manslaughter on

September 13th of the same year.[1]   Terrick was later indicted on a count of second degree murder on June 6, 2002.[2] Terrick was tried and convicted of second degree murder by a 12 person jury on July 17, 2002.[3] On August 2, 2002, motions filed for a new trial and a post-verdict judgment of acquittal were denied by the 24th Judicial District Court.[4] On August 16, 2002, petitioner was sentenced to a mandatory term of life imprisonment at hard labor.[5] August 16, 2002 also marks the day when Terrick's appointed counsel, James A. Williams, withdrew from the case.[6] On December 5th, 2002, Attorney Jane Beebe, counsel for the Louisiana Appellate Project, was assigned to represent Terrick for his appeal.[7]

On May 27, 2003, an appeal was filed with the Louisiana Court of Appeal, Fifth Circuit with the brief of appellee soon following on June 23, 2003.[8] The issues raised on

---

[1] State Record Vol.1, p. 22, Arrest Register, 8/01/01. State Record Vol. 1, p.19, Indictment, 09/13/01.

[2] State Record Vol. 1, p. 21, Indictment, 06/06/02.

[3] State Record Vol. 1, Verdict Sheet, *State v. Terrick,* No. 01-4723, 24th Judicial District Court for the Parish of Jefferson, dated 07/17/02; State Record Vol. 3, Sentencing Order dated 08/16/02.

[4]State Record Vol. 1, p. 57-60, *State v. Terrick*, No. 01-4723, 24th Judicial District Court for the Parish of Jefferson, 08/02/02. State Record, Vol. 2, p. 264-276, Transcript of Motion for a New Trial and Motion for a Post Verdict Judgment of Acquittal.

[5]State Record Vol. 1, Commitment dated 8/16/02; State Record Vol. 2,  Sentencing Transcript.

[6]State Record Vol. 1, Minute entry dated 8/16/02 showing Williams withdrew as counsel.

[7]State Record Vol. 1, p. 64,  Letter to the 24th J.D.C. for the Parish of Jefferson, Clerk of Court, dated 12/05/02.

[8]State Record Vol. 2, Brief of Appellant and Appellee.

appeal were: (1) sufficiency of the evidence to uphold petitioner's conviction and (2) whether the trial court committed reversible error in (a) denying defendant's motion to suppress the statement he gave the police; and (b) in denying his motion for a new trial.[9] On September 30, 2003, the Louisiana Fifth Circuit Court of Appeal affirmed the trial court on appeal and remanded with instructions for the lower court to advise petitioner of the time deadlines for filing a post-conviction writ.[10]

On October 7, 2003, in compliance with the remand instructions of the Louisiana Fifth Circuit Court of Appeal, Judge Pitre of the 24th Judicial District Court sent notification to Terrick that Terrick had a two year period within which to file for post-conviction relief from the date the conviction became final.[11]

After the September 30, 2003 ruling by the Louisiana Fifth Circuit Court of Appeal, Terrick no longer had the services of counsel, thereby making Terrick *pro se* in his defense. Terrick, *pro se*, petitioned the Louisiana Supreme Court for review of the Louisiana Fifth Circuit Court of Appeal's decision. Terrick's petition for review was postmarked on October 26, 2003.[12]  However, petitioner's writ was not stamped as filed until December 3, 2003 by the Louisiana Supreme Court.[13]  The Louisiana Supreme Court ruled on Terrick's writ on

_____

[9] State Record Vol. 2, Brief of Appellant.

[10] State Record Vol. 3, *State v. Terrick*, 857 So.2d 1153 (La. App. 5 Cir. 9/30/03).

[11] State Record Vol. 3,  Judge Pitre's letter to Terrick dated 10/7/03.

[12] State Record Vol. 3 or 4, Letter from Supreme Court of Louisiana Clerk dated 12/03/03.

[13] *Id.*

March 26, 2004 with a one word ruling: "DENIED."[14]  Petitioner did not file for review of this decision with the United States Supreme Court.

Instead Terrick signed and dated an application for post-conviction relief (PCR) to the 24th Judicial District Court on March 2, 2005. Although the application, received and filed on March 8, 2005, alleged that the conviction was obtained in violation of the constitution of the United States or the State of Louisiana, because he was "denied due process and/or equal protection of law on direct review", the crux of Terrick's argument centered on insufficiency of the evidence .[15]  Terrick's application for post-conviction relief was denied by the 24th Judicial District Court on March 14, 2005.[16] Terrick's application for supervisory writ of review to the Louisiana Fifth Circuit Court of Appeal was filed on April 6, 2005, the day Bobby Terrick placed his writ application in the prison's mail system.[17] On April 15, 2005, petitioner's writ was denied.[18]

---

[14]State Record Vol. 3, *State v. Terrick*, 871 So.2d 346 (La. 3/26/04).

[15]State Record Vol. 3,  Application for Post Conviction Relief, *State v. Terrick*, No. 01-4723 (24th J.D.C. for the Parish of Jefferson dated 3/08/05).

[16]State Record Vol. 3, *State v. Terrick*, No. 01-4723 (24th J.D.C. for the Parish of Jefferson dated 3/14/05), Order denying post-conviction relief as repetitive.

[17] State Record Vol. 4, Certificate of Service, signed by Bobby Terrick.

[18] State Record Vol. 3, *State v. Terrick*, No. 05-KH-385 (La. App. 5 Cir. 04/15/05)(unpublished opinion).

On May 12, 2005, petitioner's pleading requesting review of the Fifth Circuit's decision was mailed to the Louisiana Supreme Court.[19] Petitioner's pleadings were acknowledged to have been postmarked as of May 12, 2005 by the Clerk of Court of the Louisiana Supreme Court.  However, petitioner's pleadings were not stamped as filed by the Louisiana Supreme Court until June 8, 2005.[20]

While awaiting the Louisiana Supreme Court's decision, Terrick  prematurely filed his habeas corpus petition with the U.S. District Court for the Eastern District of Louisiana.[21] Petitioner signed his petition on December 29, 2005 and the petition is postmarked as of December 30, 2005.[22] The petition was stamped as filed by the U.S. District Court for the Eastern District of Louisiana on February 2, 2006.[23] Terrick's petition for federal habeas corpus alleges that his U.S. Constitutional and/or Louisiana Constitutional rights were violated. The claims Terrick raises in his federal habeas petition are: (1) that the evidence was legally insufficient to support a finding of guilt, and (2) petitioner was denied due process on direct appeal, when the appellate court rendered an adverse ruling upon

---

[19] State Record Vol. 4, Letter from Supreme Court of Louisiana's Clerk dated 06/08/05, No. 2005-KH-1537.

[20]*Id.*

[21]See Fed. Rec. Doc. No. 1.

[22]Fed. Rec. Doc. No. 1.

[23]Fed. Rec. Doc. No. 1.

petitioner's claim of insufficient evidence.[24] The State filed a response to the petition wherein the State concedes exhaustion but asserts that Terrick's federal habeas petition is untimely.[25] The State also contends that, if the application is found to be timely by the court, Terrick's application should be dismissed on the merits.[26]

On March 10, 2006, the Louisiana Supreme Court denied relief of Terrick's supervisory writ of review on the basis that Terrick's post-conviction application was repetitive.[27]

### Timeliness

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner has one year to bring his habeas corpus claims pursuant to Title 28, United States Code, Section 2244, with this one year period commencing to run from "the latest of" either the date the petitioner's state judgment became final or the expiration of his time for seeking review. See 28 U.S.C. § 2244(d)(1) (West 2008), as amended by the AEDPA, P.L. 104-132, 110 Stat. 1120. See also *Giesberg v. Cockrell*, 288 F.3d 268, 270 (5th Cir. 2002).

With regard to the date when Terrick's conviction became final, the State argues that, since  petitioner filed his request for review of his direct appeal to the Louisiana Supreme

---

[24]Fed. Rec. Doc. No. 1, Petition for Writ of Habeas Corpus at  p. 4, dated December 29, 2005.

[25]Fed. Rec. Doc. No. 3, State Response at p.10, dated May 8, 2006.

[26] Fed. Rec. Doc. No. 3, State Response at  p. 21, dated May 8, 2006.

[27] State Record Vol. 4, *State v. Terrick,* 871 So. 2d 501 (La. 03/10/06). The ruling was, "Denied. Repetitive. La. C.Cr. P. Art. 930.4(A)."

Court after the thirty days allowed by law for such review, that the conviction should be considered final on October 30, 2003, thirty days after the Louisiana Court of Appeal, Fifth Circuit, denied Terrick's direct appeal.  Based upon this October 30, 2003 date, the State calculates that petitioner's one year limitation period expired before he filed his federal petition. The court finds, however, that petitioner's request for review of his direct appeal was not untimely filed with the Louisiana Supreme Court for the following reasons.

In *Causey v. Cain*, 450 F.3d 601, 605-06 (5th Cir. 2006)(emphasis added) the court found that "the Louisiana Supreme Court has applied the prison mailbox rule with unfailing consistency as a matter of state law."[28] Therefore, the mailbox rule is to be employed in ascertaining the filing date of prisoners' Louisiana *state* court pleadings in the context of determining the timeliness of his federal habeas corpus application. *Causey*, 450 F.3d at 605-06.  *Causey* extends *Houston v. Lack* [29] to cover *pro se* prisoners' state court filings within Louisiana, taking note that Louisiana state rules differ from those Texas state rules discussed in *Coleman v. Johnson,* 184 F.3d 398 (5th Cir. 1999).[30]  *Causey v. Cain* specifically addressed a *pro se* prisoners' filing of a writ of review or certiorari with the Louisiana

---

[28]Under the mailbox rule, a pleading filed by a prisoner acting *pro se* is considered to be filed on the date it is delivered to prison officials for mailing, rather than the date it is received by the court.  *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).

[29]*See Houston v. Lack*, 487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed.2d 245 (1988).

[30]*Coleman v. Johnson* represents the leading case in Texas on the issue of applying the prison mailbox rule to state filings. Texas state rules differ from Louisiana rules to the extent that the prison mailbox rule is applicable under Louisiana state rules and until recently, inapplicable under Texas state rules. *Causey v. Cain*, 450 F.3d 601, 605 (5th Cir. 2006).

Supreme Court for direct review of a conviction.  In a *pro se* prisoner's application for direct review, the prison mailbox rule will apply in Louisiana under *Causey v. Cain.*

Petitioner's writ requesting review of his direct appeal was not filed with the Louisiana Supreme Court until December 3, 2003; however, petitioner signed the petition on October 24, 2003 and mailed the writ for direct review on October 26, 2003.[31]  When applying the prison mailbox rule to state filings, an application for direct review is filed when it is placed in the prison mail system.[32] Here, petitioner placed his writ application to the Louisiana Supreme Court in the prison mail system before the October 26, 2003 post-mark date, which was in sufficient time for the writ to be considered timely filed under state law. Moreover, it does not appear as if the Louisiana Supreme Court treated the application as untimely filed.[33]

Therefore, in accordance with the *Causey* decision, petitioner's conviction became final on June 24, 2004, ninety (90) days after March 26, 2004, the date the Louisiana Supreme Court reviewed and denied petitioner's direct appeal.[34]  Accordingly, under 28

---

[31]State Record Vol. 3 or 4, Letter from Supreme Court of Louisiana Clerk dated 12/03/03; State Record Vol. 4, Writ No. 03-3272, "Original Brief of Appellant", stamp dated 12/03/03.

[32]*Causey v. Cain*, 450 F.3d at 607.

[33]The Louisiana Supreme Court likely treated Terrick's application as timely in this very case. "[W]hen the denial of an application is based on untimeliness, Louisiana courts routinely and unmistakably indicate so in their opinions." *Causey v. Cain* citing *Gillette v. Warden*, 372 F.3d 765, 775 (5th Cir.2004). Here, the Louisiana Supreme Court did not indicate that Terrick's filing was untimely.

[34]A conviction becomes final at the conclusion of direct review or when the time for such review has expired as specified in Title 28, United States Code, Section 2244(d)(2), regardless of

U.S.C. § 2254, petitioner's federal *habeas* limitation period would expire on June 24, 2005, one year from the date the conviction became final.

Since petitioner did not file his federal habeas action until December 29, 2005,[35] six months after the June 24, 2005 deadline, petitioner's federal application would still be time-barred unless petitioner effectively tolled the limitation period under 28 U.S.C. §2244(d)(2). Under this provision, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998).

The record shows that Terrick filed an application for post-conviction relief in the state court on March 8, 2005, allowing a lapse of two hundred and fifty-seven (257) days of his one year limitation period (running from the day after his conviction became final, June 25, 2004, through the day before the filing of the PCR, March 7th, 2005). The trial court denied relief on March 14, 2005. On April 6, 2005, petitioner timely filed for review of this decision with the Louisiana Fifth Circuit Court of Appeal, which was denied on April 15,

---

when state law says finality occurs. See *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). The time for seeking such review includes the 90 days allowed for a petition to the Supreme Court following the entry of judgment by the state court of last resort. *Id.*

[35]Generally, the date a prisoner signs his petition is presumed to be the date he delivered it to prison officials for mailing. See *Colarte v. Leblanc*, 40 F.Supp.2d 816, 817 (E.D. La. 1999) (assumed that petitioner turned his habeas corpus application over to prison officials for delivery to this Court of the date he signed his application); *Magee v. Cain*, 2000 WL 1023423, *4 n.2 (E.D. La. 2000) (inferred that filing date and signature date of habeas petition were the same); *Punch v. State*, 1999 WL 562729, *2 n.3 (E.D. La. 1999) (may reasonably be inferred that prisoner delivered habeas petition to prison officials for mailing on date he signed petition). Terrick signed his federal petition on December 29, 2005.

2005.  Terrick then timely filed for review with the Louisiana Supreme Court on May 12, 2005. Since petitioner's post-conviction pleadings were timely filed, the federal limitations period was tolled until the Louisiana Supreme Court's denial of his post-conviction proceedings on March 10, 2006.[36] With the federal petition already filed as of December 29, 2005, no additional time ran against petitioner and his federal habeas application is timely filed. Accordingly, the court considers the merits of Terrick's federal application.

### Background Facts[37]

Three witnesses testified at trial, including the investigation officer, a fact witness, and the coroner. The investigating officer, Detective John Drury of the Jefferson Parish Sheriff's Office Homicide Division, testified that at approximately 5:00 a.m. on July 27, 2001, he received a report of a man shot in the head, located in the rear yard of 501 Wilker Neal Street in Kenner. Detective Drury responded to the call and found the victim Edward Sanchez, still alive. The victim was taken to the East Jefferson General Hospital where he subsequently died.

---

[36]Since petitioner's application for PCR review to the Louisiana Supreme Court was not stamped as filed until June 8, 2005, the State argues that petitioner's request for supervisory review to the Louisiana Supreme Court was untimely.  However, once again, the mailbox rule previously discussed applies and the court finds petitioner's application was filed as of May 12, 2005 and therefore was timely. Therefore, no additional time ran against petitioner's federal limitations period.

[37] After this court's independent review of the record, the facts as related in the state appellate court's opinion on direct appeal, *State v. Terrick*, 857 So.2d 1153, 1155-1157 (La. App. 5 Cir. 9/30/03) are incorporated into this opinion.

Dr. Susan Garcia of the Jefferson Parish Coroner's Office performed an autopsy on the victim. She testified that the victim died from a single gunshot to the head. In addition to the fatal wound, the autopsy revealed other injuries to the victim, including a bruised and swollen face and knuckles, lacerations of the head and abrasions of the chest. Toxicology tests run on the victim's blood and urine revealed the presence of cocaine and alcohol. A bullet jacket fragment was also recovered from the victim's body.

Detective Drury investigated the crime scene and had photographs of the area taken. The investigation revealed a footprint near the location where the victim's body was found and a blood trail running from the front of the residence to the rear. Testing disclosed that the blood matched the victim's. While searching the area around the residence, officers recovered a torn and bloodstained shirt, a bullet jacket fragment, and a dollar bill.

The investigation led Detective Drury to interview Rosemary Charles as a possible witness to the events surrounding this homicide. Ms. Charles gave police a statement about her observations on the night of the murder and then, based on a photographic line-up, identified defendant and Jeremy Ross as the men she saw assaulting the victim on that night.

Rosemary Charles was also called as a witness at trial. She testified that, on the evening of July 26, 2001, she went to a club in Kenner where she drank several beers. After she left the club, she walked to the house of a friend who lived on Wilker Neal Street, just off of Bengal Street in Kenner. From there, Ms. Charles walked to her brother's house, also located on Wilker Neal Street. According to Ms. Charles, it was approximately 3:00 or 4:00 a.m on July 27, 2001 when Ms. Charles walked down Wilker Neal Street to her brother's

house.  In the 500 block of Wilker Neal, she saw three men engaged in an argument. The men were standing near a corner on Wilker Neal Street. Ms. Charles recognized two of the men as defendant and Jeremy Ross. She knew defendant and Ross from the neighborhood. According to Ms. Charles, the third man appeared to be either a light-skinned African-American or a Hispanic male. Ms. Charles testified that she walked past the three men on her way to her brother's house. She heard the third man, later identified as the victim, Edward Sanchez, say to defendant and Ross, "I'm 5-0, I got all now." She heard one of the other two men say "5-0 my a–, I want my money." According to Ms. Charles, a physical encounter ensued and Sanchez was trying to take something from defendant and Ross. Ms. Charles continued walking to her brother's house, which was located four houses away from where the three men were located. As she approached her brother's residence, Ms. Charles looked back over her shoulder and she saw defendant and Ross kicking and punching Sanchez as he lay on the ground.

Ms. Charles entered her brother's residence and told him what she had just seen. Ms. Charles' brother cautioned her to stay inside his house. He also told her that he would walk her home to get some clothes so she could return and stay at his house while he went to work. Ms. Charles remained inside her brother's house approximately one-half hour. Thereafter, she and her brother left and walked down Wilker Neal Street. As the pair walked through the area where she had previously witnessed the three men, Ms. Charles could hear someone moaning from the rear of the blue house located on a corner of Wilker Neal Street. She saw the victim lying in the backyard of the house and she thought he had been beaten. She did

not realize the victim had been shot because she had not heard any gunshots. Ms. Charles'
brother told her that this incident was none of her business, and the pair continued walking
to Ms. Charles' residence. Thereafter, escorted by her brother, Ms. Charles returned to her
brother's house where she remained until the next day.

Based on information Ms. Charles gave the police, along with the positive
identification she provided during the photographic line-up, defendant and Jeremy Ross were
arrested and booked for the murder of the victim. Ross declined to give police a statement,
but defendant did give a statement to Detective Drury. In that statement, which was provided
to the jury at trial, defendant admitted to punching the victim. He also admitted to chasing
the victim to the rear of the house on Wilker Neal Street, along with Jeremy Ross. According
to the defendant's statement, while the men were in the rear yard, Jeremy Ross shot the
victim with a .357 revolver.

### <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a
comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. § 2254.
Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions
of fact, question of law, and mixed question of law and fact. Provided that the state court
adjudicated the claim on the merits, pure questions of law and mixed question of law and fact
are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2); *Hill
v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court  may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams [v. Taylor*, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone,* 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L. Ed.2d 914 (2002) (citation omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination  of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2);  *see also Hill*, 210 F.3d at 485; 28 U.S.C. §2254(e)(1).

## <u>Analysis</u>

### Claims 1 and 2: Insufficiency of Evidence / State Court Denial of Insufficiency of Evidence Claim

Petitioner's principle claim of insufficient evidence to support the verdict of guilty of second degree murder presents a mixed question of law and fact, see *Perez v. Cain*, 2008 WL

108661 (E.D. La.)(J. Berrigan), *affirmed* 529 F.3d 588 (5th Cir. 2008). Thus the claim will be reviewed under 28 U.S.C. Section 2254(d)(1), with the State court's determination receiving deference unless such determination was "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Additionally, state court factual findings will be given appropriate deference under 28 U.S.C. Section 2254(d)(2).

Petitioner claims that there was insufficient evidence to support a conviction of second degree murder, and that the state courts' rejection of his claim of insufficient evidence has caused a violation of due process.[38] Petitioner's main arguments relative to the claim of insufficiency of evidence are (1) that the evidence used did not show an 'intent to kill,' (2) that petitioner should not have been considered a principal to murder since he did not pull the trigger, and, (3) that the evidence used to convict is circumstantial so that if any hypothesis of innocence survives he should be released from the second degree murder charge.[39]

On direct appeal, the Louisiana Fifth Circuit Court of Appeal, when reviewing petitioner's insufficient evidence claim, used the appropriate standard of review under federal law and corresponding state law. The Louisiana Court of Appeal, Fifth Circuit acknowledged that:

---

[38] Fed. Rec. Doc. No. 1, Petition for a Writ of Habeas Corpus at p. 4, dated December 29, 2005.

[39] Fed. Rec. Doc. No. 1, Petition for a Writ of Habeas Corpus at pp. 4-10, dated December 29, 2005.

In reviewing the sufficiency of the evidence presented against defendant at trial, this Court must decide whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *State v. Mitchell*, 99-3342, p.9 (La. Oct.17, 2000), 772 So.2d 78, 82 . We are not called to assess credibility of the witnesses or reweigh the evidence. *State v. Marcantel*, 815 So.2d 50, 56.(La. 4/03/02) The jury makes credibility determinations and may, within the bound or rationality, accept or reject the testimony of any witness. Thus, an appellate court may impinge upon the jury's discretion "only to the extent necessary to guarantee the fundamental protection of due process of law." *State v. Tate*, 01-1685, p. 9 (La. 5/20/03) 851 So.2d 921(La. 5/20/03), *State v. Ruffin*, 02-798, p. 10 (La. App. 5 Cir. 12/30/02, 836 So.2d 625, 630.

*State v. Terrick,* 857 So.2d 1153, 1157 (La. App. 5 Cir. 2003).

In applying the *Jackson v. Virginia* standard, the U.S. Fifth Circuit has instructed a reviewing court to examine "the substantive elements of the criminal offense as defined by state law." *Dupuy v. Cain*, 201 F.3d 582, 589 (5th Cir. 2000). To ensure compliance with this notion, this Court reviews petitioner's claims as they interact with the elements of second degree murder. The Louisiana Court of Appeal,  Fifth Circuit correctly outlined the elements of petitioner's crime out as follows:

To convict defendant of second degree murder . . . , the state was required to prove that he (the petitioner) had the specific intent to kill or to inflict great bodily harm on the victim. LSA-R.S. 14:30.1(A)(1). Specific intent is "that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent may be inferred from the circumstances of a transaction and from the actions of the accused. *State v. Tate*, *supra; State v. Mitchell*, *supra.* Additionally, specific intent to kill or inflict great bodily harm may be inferred from the extent of the victim's injuries. *State v. Daniels*, 01-545, p. 12 (La. App. 5 Cir. 11/27/01), 803 So.2d 157, 162.

*Terrick*,  857 So.2d 1153, 1157 (La. App. 5 Cir. 9/30/03).

The Louisiana Fifth Circuit Court of Appeal elaborated, emphasizing the definition of a principal to a crime under LSA-R.S. 14:24:

> "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime are principals." . . . [P]ersons who assist in the commission of a crime are guilty as principals, although they do not directly commit the act constituting the offense. *State v. Lynch*, 512 So.2d 1214, 1216 (La. App. 5 Cir. 1987).

*Terrick,* 857 So.2d 1153, 1157 (La. App. 5 Cir. 9/30/03).

With regards to specific intent to kill, Petitioner argues that since the evidence does not show a specific intent to kill, he is guilty of nothing more than manslaughter.[40] Petitioner admits that the record shows that he may have meant to beat Mr. Sanchez,[41] but he asserts that the evidence does not show he intended to kill the victim.  Such an argument conveniently ignores the portion of the statute containing "or to inflict great bodily harm." To convict petitioner of second degree murder in this case, the state was required to prove that he had the "specific intent to kill *or to inflict great bodily harm* on the victim." LSA-R.S. 14:30.1 (A)(1). (emphasis added). Standards used to find specific intent, as aptly stated by the Louisiana Fifth Circuit Court of Appeal, are as follows: "Specific intent may be inferred

---

[40] Fed. Rec. Doc. No. 1, Petition for Writ of Habeas Corpus at pp.8-9, dated December 29, 2005. The jury could have selected the responsive verdict of manslaughter but decided in favor of second degree murder.  See State Rec. Vol. 1,  Jury Charges and Responsive Verdict Form.

[41] Fed. Rec. Doc. No. 1, Petition for Writ of Habeas Corpus at p. 8, dated December 29, 2005.

from the circumstances of a transaction and from the actions of the accused; specific intent to kill or inflict great bodily harm may be inferred from the extent of the victim's injuries."

The testimony of Rosemary Charles, the defendant's own statement, and the autopsy report and coroner's testimony  provided sufficient evidence for the jury to conclude that petitioner intended to inflict great bodily harm upon the victim.[42] Specifically, the following testimony and evidence supports the jury's verdict of second degree murder:

Rosemary Charles saw defendant and another man arguing with the victim.  She recognized both Terrick and Ross from the neighborhood. She saw both the defendant and the other man brutally kicking, stomping upon and punching the victim ("constant kicking and punching") as the victim lay on the ground.  Ms. Charles also stated that she and her brother saw the victim laying on the ground moaning a short time later.[43]

Bobby Terrick's own statement given to the police indicated that there was conflict concerning drugs between the victim, Terrick and Jeremy Ross (Ross is Terrick's cousin). When the victim approached, Terrick told Ross to put his shirt over his face. When the victim attempted to take the drugs from Ross and Terrick under the guise of being a police officer, Terrick initiated an attack on the victim by punching him on the right-side of his  rib cage.

---

[42]*State v. Terrick,* 857 So.2d 1153, 1157 (La. App. 5 Cir. 9/30/03).  The court notes that the state appellate court also relied upon the fact that the jury saw photographs depicting the victim with his injuries.  However this court does not have said photographs included in the state record.

[43]Trial transcript, hereinafter Tr., at p. 24-28, Transcript of Proceedings dated July 17, 2002, found at State Record Vol. 4 or Vol. 1. The court notes that the jury apparently found this testimony credible despite Rosemary Charles' testimony that she drank approximately four beers that evening.  Tr. at. 38.

Ross then joined in, "jumping" on the victim.  Terrick stood on the side while Ross "got finished jumping on" the victim.  Then the victim ran and Terrick pursued him.  Next, Terrick saw Ross run to the side of the house where they had been previously standing. As Terrick continued to chase the victim, he saw Ross come back with a gun which he knew to be a .357 handgun. Terrick reported that he heard the victim scream for help and then saw Ross shoot the victim. Terrick indicated that he was approximately 7-10 feet away from the place where the victim was shot.  After the victim was shot, Terrick said he ran to his own house and Ross ran in the other direction.[44]

Additionally,  Dr. Susan Garcia, from the Jefferson Parish Coroner's Office, testified that the autopsy she conducted revealed bruises to the eyelid and swelling to the eyebrow on the left-side of the victim's face, bruised knuckles, lacerations to the right-side of the head and a slight abrasion to the arm or chest area.[45]  The autopsy report was consistent with her testimony though not as detailed.[46]

The state courts' finding that the evidence established petitioner's specific intent to kill or inflict great bodily harm was not based on an unreasonable determination  of the facts in light of the evidence presented. 28 U.S.C. §2254(d)(2).  Under Louisiana law, a defendant

---

[44]A copy of the transcribed defendant's statement to the police, dated 7/31/01, was requested from the State and has been filed into the federal record. See Rec. Doc. 14.

[45]See Tr. at pp. 10-17.  Dr. Garcia, however, stopped short of saying that the physical injuries were consistent with someone who had sustained "dozens of wounds to the head or body".

[46]A copy of the autopsy report was requested from the State and was filed into the federal record.  See Rec. Doc. 13, Report dated 8/22/01, autopsy conducted 7/28/01.

need only have the specific intent to inflict great bodily harm to be guilty of second degree murder. LSA-R.S. 14:30.1 (A)(1). Petitioner's claim that there was no evidence supporting the specific intent component of his crime is without merit.

Additionally, to the extent petitioner is contending that he was not the triggerman who shot Sanchez thus he should not be convicted of second degree murder, such a claim is contrary to Louisiana law. Under Louisiana law, a person can be found guilty of second degree murder if he was a principal to the murder. LSA-R.S. 14:24 states: "All persons concerned in the commission of a crime whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission or directly or indirectly counsel or procure another to commit the crime are principals." As stated by the Louisiana Court of Appeal, Fifth Circuit, " . . . persons who assist in the commission of a crime are guilty as principals, although they do not directly commit the act constituting the offense." *State v. Terrick*, 857 So. 2d 1153, 1157 (La. App. 5 Cir. 2003), citing *State v. Lynch*, 512 So.2d 1214, 1216 (La. App. 5 Cir. 1987).

The trial testimony supports the Fifth Circuit's conclusion that while Terrick may not have directly committed the act of pulling the trigger, he had the intent to inflict great bodily harm as above stated, and he was an active participant in the events which culminated in the victim's murder.

Finally, Terrick urges the court to view the evidence upon which his conviction is based as circumstantial. Louisiana Revised Statute 15:438 provides, in pertinent part: The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence

tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.

La. R.S.15:438 is not a separate test from *Jackson*, but rather an evidentiary guide to facilitate appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. "This is not a purely separate test from the *Jackson* sufficiency standard to be applied instead of a sufficiency of the evidence test . . . [u]ltimately all evidence, both direct and circumstantial, must be sufficient under *Jackson v. Virginia* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Rosiere,* 488 So.2d 965, 968 (La.. 1986).[47]

Terrick appears to argue that the jury could not have ruled out every reasonable hypothesis of innocence.  Specifically, he asserts that the facts developed at trial to the effect that he did not report the crime and did nothing to assist the victim after Mr. Ross allegedly shot him, were considered adversely by the jury.  However, Terrick argues these facts may not have been indicative of his guilty intent but rather of his own fear and desire not to be further involved in the crime.[48]

---

[47]When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Barakat*, 877 So. 2d 233 (La. App. 2d Cir. 6/23/04). Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Barakat, supra*. A conviction based upon circumstantial evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438.  See *State v. Robbins,* 979 So.2d 630 (La. App. 2d Cir. 3/19/2008).

[48]Terrick also claims that the jury should have considered the fact that witness Rosemary Charles did nothing to assist the victim despite knowing that he was being attacked and possibly injured.  However, as a participant of the attack on the victim, Terrick's obligation to assist the victim after Ross allegedly surprised Terrick by shooting him, far exceeds the duty Ms. Charles

The evidence which convicted petitioner was direct evidence: defendant's statement, witness testimony and the medical findings submitted at trial which corroborated the witness testimony. Applying the *Jackson* standard, it was reasonable, i.e., within the jury members' own experience and using their own powers of reason, for the jury to infer from the circumstances of petitioner's flight from the crime scene and failure to offer assistance to the victim that he was guilty of the crime charged.

The jury weighed the evidence and found the evidence satisfactory to render a conviction of second degree murder. "It is within a jury's sound discretion to accept or reject in whole or in part the testimony of any witness and the credibility of witnesses will not be reweighed on appeal." *State v. Zeno*, 610 So.2d 268 (La. App. 5 Cir. 1992). Similarly, the habeas corpus statute obliges federal judges to respect credibility determinations made by the trier of fact. *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993), *cert. denied*, 114 S.Ct. 637, 126 L.Ed.2d 596 (1993), citing *Summer v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982).

Although the Louisiana Fifth Circuit Court of Appeal did not directly mention circumstantial evidence in its review of petitioner's conviction on appeal, the court properly addressed the totality of the evidence under the lens of the appropriate, clearly established federal standard set forth in *Jackson*. The question is not whether a reviewing court "...believes that the evidence at the trial established guilt beyond a reasonable

---

possibly owed to the victim to "come to his rescue" when he was being attacked. Additionally, the jury did hear Ms. Charles' account that she went about her own business rather than attempt to aid the victim.  Presumably, the jury weighed her credibility accordingly.

doubt...[i]nstead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. at 2789. This court finds *Jackson* satisfied by the state appellate court's review. Petitioner's claim for habeas corpus relief is without merit.[49]

## Amended Claim: Vindictive Prosecution

While the State conceded in its May 8, 2006 response that petitioner exhausted the previous claim/s of insufficient evidence, petitioner requested that he be allowed to amend his petition on October 10, 2006.  Petitioner concedes that this claim has not been exhausted. Specifically, petitioner amended his petition to include a claim of vindictive prosecution that can be supported, according to the petitioner, by the transcript of  his motion to quash proceedings.[50]  On January 4, 2007, Terrick filed a supplemental memorandum wherein he claims that the prosecutor's decision to increase his initial charge/indictment from manslaughter to second degree murder was tainted by vindictiveness. Petitioner claims that the timing of the increase in charges against him, i.e., occurring after plea negotiations had

---

[49]Petitioner lists, as a second claim, that he was denied due process when the appellate court denied his claim of insufficient evidence.  However, for the same reasons set forth above, petitioner's second and related claim is without merit.

[50]To amend his claim, Terrick has requested to amend the record so that his motion to quash hearing transcript will be included. However, Terrick's motion to quash transcript is already part of the official state record submitted to this court. See State Record Vol. 1, Proceedings dated May 2, 2002.

failed and after petitioner's co-defendant Ross had been acquitted in a separate trial, presumptively establishes vindictiveness of the part of the prosecution.[51]

Petitioner's claim for vindictive prosecution is viewed under the standard that "[a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." *United States v. Goodwin*, 457 U.S. 368, 379-82, 102 S. Ct. 2485, 2492-93, 73 L. Ed.2d 74 (1982). "An initial decision should not freeze future conduct . . . (as) the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." *Id*.  A mere opportunity for vindictiveness is insufficient to justify a presumption of vindictiveness. *Id.* at 384. Since petitioner was indicted on a count of second degree murder after the initial indictment on the charge of manslaughter, but before the trial initiated, no presumption of prosecutorial vindictiveness is attached.[52]  Absent a presumption of vindictiveness in this context, the defendant must prove that the prosecutors' conduct was actually vindictive. *See*

--------

[51]Rec. Doc. 7, Document filed January 1, 2007, Petitioner's supplemental memorandum relative to amended claim.

[52] As illustrated by *United States v. Goodwin,* [t]here is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. [The Supreme Court has isolated two factors of the pretrial setting in particular that distinguish it from the post-trial setting.] [First,] . . .  the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. In addition, a defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor. . . [making it unrealistic to assume that the prosecutor's response to such an invocation of rights is vindictive.] See 457 U.S. 368, 381-2, 102 S.Ct. 2485 , 2492-3 (1982).

*United States v. Molina-Iguado*, 894 F.2d 1452, 1455 ( 5th Cir.1990), *cert. denied*, 498 U.S. 831, 111 S. Ct. 95, 112 L. Ed.2d 66 (1990).

The motion to quash and the general timing of events such as Terrick's co-defendant's acquittal, are the only evidence Terrick relies on in his amended claim to support his claim of vindictive prosecution.  The motion to quash does not  provide Terrick with any evidence to support his claim of vindictive prosecution. Terrick's motion to quash his manslaughter indictment was based on the claim that Terrick should have been prosecuted as a juvenile rather than as an adult.[53]  The 24th Judicial District Court denied the motion to quash on May 2, 2002. On June 6, 2002, the State filed charges of second degree murder against Terrick. However, the jurisprudence makes clear that the timing of charges alone is insufficient to establish a presumption of vindictiveness.  *Goodwin*, 457 U.S. at 381, 102 S.Ct. at 2493 and *Molina-Iguando*, 894 F. 2d at 1455.  Similarly, petitioner claims that his co-defendant was acquitted sometime in May of 2002 and that this acquittal improperly motivated the prosecutor to seek greater charges against him.  However, it is conceivable that evidence developed at the co-defendant's trial may have led to the prosecutor's decision to seek additional charges against Terrick.  Again, timing alone, without additional evidence of vindictiveness (particularly in a pre-trial setting), is insufficient to support Terrick's claim.

---

[53]A motion to suppress Terrick's statement given to the police was also pursued on the theory that Terrick was 16 years old at the time the police questioned him and should have had an adult present during questioning.  *See* State Rec. Vol. 1 for a copy of the motion to suppress transcript.

Terrick thus fails to meet his burden of showing actual vindictiveness on the part of the prosecutor.[54]

Although the court finds that petitioner's amended claim fails on the merits, the claim of prosecutorial vindictiveness is also untimely filed with this court. As previously explained in the discussion on whether Terrick was timely in filing his original federal petition, the Louisiana Supreme Court denied Terrick's post-conviction request on May 10, 2006, after 257 days of petitioner's 365 day limitation period had run. Thus, the limitations period was due to expire 108 days later or on August 20, 2006. Petitioner filed his request to amend with the claim of prosecutorial vindictiveness with this court on October 12, 2006, after the AEDPA deadline had passed.[55] The United States Supreme Court has held that a request to amend a habeas petition, which seeks to add claims *unrelated* to those raised in the original petition, and which is *filed after expiration of the AEDPA's limitations period*, does not relate back to the original petition under Fed. R. Civ. P. 15(c). *Mayle v. Felix,* 545 U.S. 644, 125 S.Ct. 2562, 2574 (2005). In order for an amended claim to relate back to the filing date of the original pleading under Rule 15(c)(2), Terrick's amended claim would have had to be filed:

---

[54]This court thus denies Terrick's additional claim of vindictive prosecution as being without merit without the claim being exhausted. See *Jones v. Jones*, 163 F.3d 285 (5th Cir. 1998), *cert denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed 2d 1094 (1998)(AEDPA allows a federal court to deny an application on the merits notwithstanding failure to exhaust remedies.)

[55]Although Terrick filed his federal habeas on or about December 29, 2005, an application for federal habeas corpus review is not an "application for State post-conviction or other collateral review" within the meaning of 28 U.S.C. Section 2244(d)(2). Section 2244(d)(2) therefore did not toll the limitation period during the pendency of petitioner's federal habeas petition. *Duncan v. Walker*, 533 U.S. 167, 181-182, 121 S.Ct. 2120, 2129, 150 L.Ed.2d 251 (2001); *Grooms v. Johnson*, 208 F.3d 488 (5th Cir. 1999)(per curiam).

(1) prior to the expiration of the one year federal limitation period;  and, (2)  the claim asserted in the amended pleading must have "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading". *Mayle,* 545 U.S. 644, 656.  The *Mayle* court rejected a broad interpretation of the words, "arose out of the conduct, transaction, or occurrence", specifically declining to find that as long as the new claim stemmed from the habeas petitioner's trial, conviction, or sentence, the amended claim would relate back to the original filing. Rather,  *Mayle* allows relation back only when the amended claims arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in "both time and type" from the originally raised episodes. *Id.*

Terrick's claim of prosecutorial vindictiveness stems from the prosecutor's decision to increase the charge against him from manslaughter to second-degree murder.  This decision is factually unrelated to petitioner's claims that the jury convicted him on insufficient evidence or that the appellate court erred in denying the claim of insufficient evidence.  Moreover, the amended claim arose from the June 6, 2002 decision of the prosecutor to increase the charges, which is removed in time from the sufficiency of the evidence issues arising out of petitioner's July 17, 2002 trial and the subsequent appellate review of the case on September 30, 2003.

For the aforementioned reasons, petitioner's amended claim of prosecutorial vindictiveness is barred from federal review by *Mayle*.[56]

Petitioner fails to establish that he is entitled to federal habeas relief. Accordingly;

## **RECOMMENDATION**

It is hereby **RECOMMENDED** that the petition of Bobby Terrick for issuance of a writ of habeas corpus be **DENIED**.  A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that part, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n* 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this ___18th___ day of_____August_____, 2008.


_____
LOUIS MOORE, JR.
United States Magistrate Judge

---

[56]Accordingly, petitioner's request for a stay of his federal habeas, made within his motion to amend and supplement (see Rec. Doc. 5) is DENIED.  No purpose would be served in allowing petitioner to exhaust his claim of vindictive prosecution since he would be time-barred from federal review of the claim regardless of the outcome of additional state proceedings.